UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARL ORVIS,

                Plaintiff,

                                      Case Number 08-11541

v.                                    Honorable David M. Lawson
                                        Magistrate Judge Paul J. Komives

DEPUTY HORNBUCKLE, DMC
HOSPITAL, COUNTY OF WAYNE,
and JOHN DOES,

                Defendants.

_____ /

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATION, OVERRULING PLAINTIFF'S
OBJECTIONS TO REPORT AND RECOMMENDATION, GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND
DISMISSING COMPLAINT WITH PREJUDICE**

The matter is before the Court on the plaintiff's objections to a report filed by Magistrate

Judge Paul J. Komives recommending that the defendants' motion for summary judgment be

granted.  The plaintiff filed his complaint alleging that the defendants violated his constitutional

rights when he was injured as a pretrial detainee in the Wayne County jail.  The plaintiff alleges that

he was asleep in his cell when a jail deputy activated an automatic door closing mechanism.  The

cell door closed on the plaintiff's right hand, amputating the tip of his ring finger.  His complaint

alleges a violation of his constitutional rights via 42 U.S.C. § 1983 and gross negligence under state

law.  The Court entered a general order of reference to conduct all pretrial matters, after which the

defendants filed their motion.  Judge Komives filed a report on February 23, 2011 recommending

that the motion be granted and the case dismissed.  The plaintiff filed timely objections, and the

matter is before the Court for *de novo* review.  The Court finds that the magistrate judge correctly

analyzed the issues raised by the defendants' motion.  Therefore, the Court will overrule the

plaintiff's objections, adopt the report and recommendation, grant the motion for summary judgment, and dismiss the case.

I.

Plaintiff Carl Thomas Orvis filed this civil rights action against the County of Wayne and Wayne County Sheriff Deputy Randall Hornbuckle alleging that the defendants violated his constitutional rights and were grossly negligent when they injured his right hand. When the injury occurred, the plaintiff was confined in the Wayne County Jail, Division II (the "old" jail), as a pretrial detainee. That occasion was the plaintiff's fifty-seventh admission in the past 12 years; the plaintiff spent most of that time in Division II.

The incident occurred on July 21, 2006 at approximately 9:00 a.m. The plaintiff had been confined at the jail for about a month at that point. He was asleep in cell 9, where he resided alone, and was still groggy from the dosage of Remeron and Depakote he had been given the night before. His bed abutted the cell bars and the plaintiff was sleeping face-down with his head toward the bars, his hands cradling his head and his right arm outstretched a bit toward the bars. The guards on duty were Deputy Randall Hornbuckle and Corporal James Herron. Deputy Hornbuckle had been employed with the Wayne County Sheriff's Office since 2001 and had never been disciplined or written up for misconduct. Instead, his personnel file shows that he has consistently performed well. He was assigned to work with the most difficult inmates on high security wards because of his ability to work well with inmates with behavioral problems. These facts appear to be undisputed.

Before he began working in the jail, Deputy Hornbuckle received training on the jail's policies and procedures at jailers' training classes, which lasted between 8 and 12 weeks, and followed that with a year of probationary service in active duty.

-2-

On the morning of July 21, Deputy Hornbuckle received complaints from inmates that there were Crab lice in the showers; at around 9:00 a.m., he ordered the inmates to return to their cells to allow corrections officers to investigate and clean the shower area. Hornbuckle also decided to close the cell doors once the inmates were in their cells, although when there was no need for such a lockdown, cell doors customarily remained open until 10:00 p.m.

The cell doors in Division II of the Wayne County Jail close mechanically by sliding across the opening and are operated by two clutch bars. The mechanism for these doors was located around the corner and out of direct view of the cells, although Hornbuckle testified that an officer operating the controls could see the cell doors down the hallway but not into the cells. When they close, the doors make "clinking, clunking" noises and "slam shut." Mot. Summ. J., Ex. 1, dep. of Carl Orvis, at 21-22, 24; Ex. 9, dep. of James Herron, at 48.

Hornbuckle testified he rattled the clutch and then activated the mechanism that closed the cell doors. Hornbuckle said that he only attempted to shut the door once. However, the plaintiff testified that he "heard the door move, moving and then it stopped. I kind of looked up. I seen the door wasn't shut all the way and then I heard clinking again so I just laid my head back down and then the door was forcibly opened again. It came open with a force and it slammed against the back wall and I could hear it boom and it made me jump a little bit. And then I laid my head back down and I could hear the doors closing again. And then as it was closing, that's when I felt pressure on my finger." Mot. Summ. J., Ex. 1, dep. of Orvis, at 24. The plaintiff alleges that he was unable to move his hand away from the bars in time. The closing cell door caught the plaintiff's right ring finger and severed the fingertip near the first knuckle. At first, the plaintiff was unable to yell out or to leave the cell because the doors were almost shut.

-3-

Finally, after the doors had closed, the plaintiff was able to yell out, "Dep, Dep, my finger is caught in the bars."  Mot. Summ. J., Ex. 7, dep. of Randall Hornbuckle, at  78; Ex. 1, dep. of Orvis, at 26.  Hornbuckle immediately reopened the doors and Orvis stepped out of his cell, holding his bleeding right hand.  Hornbuckle yelled for Herron, the other officer on the floor, to sound the alarm, and medical personnel arrived within minutes.  One individual who responded to the alarm was Sergeant (now Lieutenant) Evelyn Hale-Taylor.  She spoke with the plaintiff at the scene and "remember[ed] him saying that he clearly said it was not Officer Hornbuckle's fault. . . . Officer Hornbuckle was a good officer, it was my fault."  Mot. Summ. J., Ex. 10, dep. of Evelyn Hale-Taylor, at 36.  Someone found Orvis's fingertip resting on the cell bars a few rows up from where the door bisected his finger.  Hornbuckle testified that he was "so upset and distraught" over the incident and "so hurt about it because I care about people."  Mot. Summ. J., Ex. 7, dep. of Hornbuckle, at 91.

The Wayne County Jail has the following policy for initiating lockdowns on Division II:

2.  <u>Division II</u> – The following procedures will be used in Division II to lockdown at the end of the Afternoon Shift, or whenever security requires that the inmates must be locked up:
 a.  The Floor Security Officers will advise the inmates to prepare for lockdown.
 b.  The Floor Security Officers notify the inmates that the doors will be closing and to keep body parts clear of the doors.
 c.  While one officer works the locking mechanism, the other officer walks down the outside catwalk.
 d.  The officer walking down the catwalk during lockdown will make sure that all inmates are in their proper cells, and update the IMS Status Board.
 e.  After the cell doors have been secured, the officer <u>not</u> working the doors will walk inside the ward area and pull on the individual cell doors.
  1)  The officer will make sure that all inmates are accounted for and that no one has tampered with the locking mechanism.
  2)  The other officer will stand by the lock box in case of trouble--if trouble arises, this officer will be able to sound the alarm.

      3)  The lock box officer shall secure/close the ward entry door while
      the walking officer checks the inmate cell doors.

Mot. Summ. J., Ex. 11, Jail Policy.  Jeriel Heard, Chief of Jails and Courts in the Wayne County

Sheriff's Office, testified at his deposition that subsections (a) and (b) of the policy are "always

applicable to whenever inmates are locked in the cells in Division 2," but "the totality of this policy

did not apply to that particular circumstance" on July 21, 2006; compliance with subsections (c), (d),

and (e) was not required.  Resp. to Mot. Summ. J., Ex. 1, dep. of Jeriel Heard, at 65, 67-68, 69-70,

72-73.

      The plaintiff asserted at his deposition that guards operating the doors usually announce that

the doors will open or close prior to activating the controls.  Deputy Hornbuckle testified that he

calls out two or three warnings as a matter of course before activating the door controls and also

rattles the clutch mechanism, which vibrates the cell doors, as an additional warning that the doors

are about to move.  He also looks down the ward to check that the doors are clear and commented

that it was important to take time while closing the doors to ensure that all the inmates could get

clear of the doors.  Hornbuckle testified that he did so to avoid injuries — the jail had experienced

approximately three related to cell doors in the past — and Hornbuckle admitted that he was aware

of the harm the doors could cause.  Hornbuckle was aware that inmates often had their hands in the

bars.  However, he also said that guards do not check if inmates are sleeping because "[t]he only

time we close the bar they're not asleep . . . . [and] even if they were asleep, their hands and limbs

cannot get caught in the bars.  It's impossible."  Mot. Summ. J., Ex. 7, dep. of Hornbuckle, at 44-45.

      Hornbuckle admitted that neither he nor Corporal Herron were walking on the catwalk on

the date in question, nor did they have a clear view into the cells.  He also mentioned that he was

not aware that the lockdown policy required him to do so. Hornbuckle testified that he called out "several times or more" that day and rattled the clutch on the door mechanism. He also testified that the plaintiff stuck his head out of the cell, which was about 60 feet from the cell door controls, and Hornbuckle repeated his warning about doors closing. Hornbuckle admitted that he was not aware that the plaintiff had been given medication the night before. The plaintiff denies that he heard any warnings or announcements prior to the cell doors closing on July 21. He alleges that Deputy Hornbuckle failed to ensure that all inmates were accounted for and out of harm's way. However, in his deposition, the plaintiff admitted that it was possible Deputy Hornbuckle had made an announcement, but that he simply did not hear the warning.

After he was injured, the plaintiff was taken to Detroit Receiving Hospital, but doctors were unable to reattach the fingertip, or even use it for a skin graft, due to the extent of the plaintiff's injury.

Three days later, the plaintiff gave a tape recorded statement to the department's internal affairs division. He admitted that it was "[j]ust a freak accident. I know I'm sure the deputy didn't mean to do it," and that the deputy was "a really nice guy." Mot. Summ. J., dep. of Orvis, at 37, 38.

On April 10, 2008, the plaintiff filed a *pro se* complaint in this Court. The Court referred the case to Magistrate Judge Paul J. Komives for pretrial management. On June 10, 2009, the Court appointed *pro bono* counsel for the plaintiff. The plaintiff filed an amended complaint through counsel on July 20, 2009. The amended complaint alleged violations of the plaintiff's Fourteenth Amendment via 42 U.S.C. § 1983 against Deputy Hornbuckle (count I) and Wayne County (count II), and gross negligence against Deputy Hornbuckle (count III). On August 12, 2010, the defendants filed a motion to dismiss and for summary judgment.

Magistrate Judge Komives recommended that the Court grant the defendants' motion for summary judgment on the federal claims because the evidence failed to establish a genuine issue of material fact on the element of deliberate indifference.  He based that conclusion on the testimony of Deputy Hornbuckle, Corporal James Herron, and the plaintiff.  He also considered the plaintiff's prior statement to the internal affairs division that he did not believe the defendant meant to hurt him. Testimony from other witnesses confirmed similar statements by the plaintiff shortly after the incident.

Count II of the amended complaint alleges constitutional violations by Wayne County in the design and operation of the jail, failure to adopt policies to safeguard against injuring inmates, failure to ensure that the policies are followed, and vicarious liability for defendant Hornbuckle's actions.  The magistrate judge recommended dismissal of this claim because the deposition testimony of Corporal  Herron and Jeriel Heard established that officers followed the jail's policy on closing cell doors to the extent it was applicable to the situation at hand.  In addition, the magistrate judge recommended dismissing the claim against Wayne County because the plaintiff could not show that Hornbuckle violated the plaintiff's constitutional rights, even if the plaintiff was correct that the Jail's policies were not followed.

The magistrate judge also recommended dismissal of the gross negligence count because the undisputed facts showed ordinary negligence at most, and the defendants were protected by governmental immunity under Michigan Compiled Laws § 691.1407.

The plaintiff raised three objections.  First, he contends that the record demonstrates a fact question on all the elements of his deliberate indifference claim.  He believes that the assessment of Deputy Hornbuckle's conduct should be an issue for the jury to decide because there is evidence

-7-

in the record that the defendant was aware of previous incidents involving injuries from cell doors but chose to close the prison doors anyway. The plaintiff objects for similar reasons to the recommendation that summary judgment be granted on the gross negligent claim. Finally, the plaintiff objected to the recommendation that the claim against Wayne County should be dismissed because summary judgment was inappropriate on the claims against Deputy Hornbuckle.

## II.

Objections to a report and recommendation are reviewed *de novo*. "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The parties' failure to file objections to the report and recommendation waives any further right to appeal. *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Likewise, the failure to object to the magistrate judge's report releases the Court from its duty to independently review the motion. *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir. 1995). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380).

A motion for summary judgment under Federal Rule of Civil Procedure 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all

-8-

reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000) (quoting *Anderson*, 477 U.S. at 248). An issue is "genuine" if a "reasonable jury could return a verdict for the non-moving party." *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248). Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002). Thus a factual dispute which "is merely colorable or is not significantly probative" will not defeat a motion for summary judgment which is properly supported. *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir. 1993); *see also Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. BVR Liquidating, Inc.*, 190 F.3d 768, 772 (6th Cir. 1999).

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*,

555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).  The parties do not dispute that the Deputy Hornbuckle was acting under color of law.

The plaintiff identifies the Fourteenth Amendment as the source of the right he claims was violated.  The precise aspect of the alleged due process violation is not spelled out in detail. However, the defendants and the magistrate judge addressed possible arguments based on theories of excessive force and unlawful conditions of confinement.  That is appropriate.  There are two general categories of constitutional claims that can arise in a prison setting: "excessive use of government force," and unlawful "conditions of confinement."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 400-01 (6th Cir. 1999) (en banc).  A conditions-of-confinement claim is one that involves the denial of basic human needs or unsafe conditions in prison, such as exposure to open electrical connections, unsafe drinking water, prolonged exposure to tobacco smoke, exposure to toxic substances, and denial of medical care.  *See Helling v. McKinney*, 509 U.S. 25, 32-34 (1993).  The Supreme Court has held that the Eighth Amendment imposes upon prison officials the duty to "provide humane conditions of confinement" and "'take reasonable measures to guarantee the safety of inmates'"; among the obligations attendant to the discharge of these duties is to "ensure that inmates receive adequate food, clothing, shelter, and medical care."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *cf. Bell v. Wolfish*, 441 U.S. 520, 534-35 (1979) (identifying the main issue for a pretrial detainee as "the detainee's right to be free from punishment . . . and his understandable desire to be as comfortable as possible during his confinement," and that the Court must consider "whether those conditions amount to punishment of the detainee").  A failure to act by prison officials also can support an Eighth Amendment claim due to the surrounding aspects of the plaintiff's confinement.  *See Spencer*, 449 F.3d at 730-31.

-10-

As a pretrial detainee, the plaintiff did not have the benefit of the Eighth Amendment. *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001) ("The Eighth Amendment does not apply to pretrial detainees."). However, "pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that . . . are enjoyed by convicted prisoners," *Bell*, 441 U.S. at 545, and the Fourteenth Amendment confers upon pretrial detainees rights that are "analogous to the Eighth Amendment rights of prisoners." *Watkins*, 273 F.3d at 686; *see also Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006) (suggesting that the protections of the Fourteenth Amendment may be greater than those of the Eighth Amendment); *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001). A failure to act by prison officials also can support an Eighth Amendment claim due to the surrounding aspects of the plaintiff's confinement. *See Spencer*, 449 F.3d at 730-31.

However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Farmer*, 511 U.S. at 837-38. However, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell*, 441 U.S. at 539. Although a prisoner has a constitutional right to protection from dangerous conditions in his living quarters under the Eighth Amendment, that right is violated only when corrections officials are deliberately indifferent to the prisoner's serious needs. *Estelle v. Gamble*, 429 U.S. 97, 103-04, 106 (1976).

"Deliberate indifference is not mere negligence," *Watkins*, 273 F.3d at 686. Instead, deliberate indifference is the "equivalent of recklessly disregarding [a substantial risk of serious harm to a prisoner]." *Dominguez*, 555 F.3d at 550 (quoting *Phillips v. Roane Cnty.*, 534 F.3d 531, 540 (6th Cir. 2008)). Under the Eighth Amendment, "[t]he test to determine whether [a defendant] acted with 'deliberate indifference' has an objective and subjective component." *Napier*., 238 F.3d at 742; *see also Leary v. Livingston Cnty.*, 528 F.3d 438, 442 (6th Cir. 2008); *Spencer*, 449 F.3d at 727-28. To satisfy the objective component, the plaintiff must allege that the condition of confinement caused a risk of danger that was "sufficiently serious." *Farmer*, 511 U.S. at 834. "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 707 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837); *see also Spencer*, 449 F.3d at 727-29; *Miller v. Calhoun Cnty.*, 408 F.3d 803, 812-13 (6th Cir. 2005). The subjective component requires some measure of proof of intentionality. However, whether a person had subjective knowledge of and then disregarded a serious need is "'a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 842); *see also Spencer*, 449 F.3d at 729.

In arguing that the magistrate judge erred by finding no genuine issue of material fact on the issue of deliberate indifference, the plaintiff faults the magistrate judge's primary reliance on the defendant's deposition testimony, in which he denies an intent to harm the plaintiff. The plaintiff

contends that the magistrate judge should have considered the evidence of what the defendant did not do or should have done.  The defendant admitted that he was aware of previous incidents involving inmates' arms being caught in the cell bars, understood the harm the cell doors could cause, and knew that the inmates often had their hands on the bars when he opened or closed the doors.  The plaintiff alleges that despite this knowledge, the defendant chose to close the doors at an atypical time without verifying the safety of all inmates or confirming that they heard his warning and without ensuring that an officer on duty could see into all the cells.

Neither party disputes that an injury caused by a cell door would be sufficiently serious to satisfy the objective element of the deliberate indifference test.  The parties instead dispute whether the plaintiff can meet the subjective component of deliberate indifference, which requires the plaintiff to show that the defendant "subjectively perceived facts from which to infer a substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk."  *Comstock*, 273 F.3d at 707 (citing *Farmer*, 511 U.S. at 837)

Viewed in the light most favorable to the plaintiff, the facts show that the defendant was aware of prior incidents of injuries by cell doors, but that he believed it was "impossible" for an inmate to be injured by the doors while he was sleeping.  There is no evidence from which a jury could infer that Hornbuckle was indifferent to a serious injury to the plaintiff or that he intended to cause pain or inflict punishment.  Certainly the possibility of injuring an inmate with a closing cell door existed.  But there is no evidence that a door injury to a sleeping inmate was inevitable.  The likelihood of an injury to the plaintiff at the time Hornbuckle closed the door was not so obvious as to permit a jury to find that the defendant actually drew the inference that an injury to the plaintiff would likely result from the defendant's conduct.  The evidence at most shows that Hornbuckle was

-13-

careless.  But as noted above, negligence falls short of deliberate indifference.  *Watkins*, 273 F.3d at 686.

The undisputed evidence undermines the plaintiff's argument.  Although the plaintiff alleges that he did not hear a warning, the evidence supports the defendant's position that he did call out a warning.  Both Hornbuckle and Corporal Herron testified that the defendant called out two or three warnings before closing the doors and the defendant also testified that he rattled the clutch.  The plaintiff admitted that he heard the vibration caused by the clutch rattling but failed to move his hand.  Even if the defendant did not check each cell for limb clearance, the evidence shows that he did not disregard the risk of harm to inmates because he gave several warnings, following his typical practice.

Hornbuckle also testified that he was unaware that the lockdown policy required a guard on the catwalk.  He said he had never done that before.  The plaintiff, defendant, and Herron all testified that standard practice was to call out several warnings, but none of them testified that guards typically walk the catwalk before the doors are closed.

Perhaps the defendant could have engaged in additional safety measures before closing the doors, such as a door check of every cell.  But these measures were not necessary and their omission does not indicate deliberate indifference.  The defendant asserted that he was able to see the cell bars from his position at the control panel and could stop the doors if he saw an obstruction.  The plaintiff has provided no evidence to suggest that the defendant saw an obstruction in his cell, especially in light of the defendant's testimony that sleeping inmates could not be injured.

-14-

Finally, the plaintiff's own statements undermine his claim.  At the scene of the incident and three days later, the plaintiff stated that the event was "[j]ust a freak accident" and that it was not the defendant's fault.

The plaintiff has failed to present evidence that the defendant disregarded the risk of injury in this case; instead, he made admissions tending to support the defendant's position.  Defendant Hornbuckle is entitled to summary judgment on count I of the amended complaint.

Wayne County is entitled to summary judgment as well.  There can be no municipal liability without a finding of a constitutional violation on the part of at least one state actor.  *Cartwright v. City of Marine City*, 336 F.3d 487, 495 (6th Cir. 2003) (holding that "[b]ecause the City can only be held liable if there is a showing of liability on the part of its officials, the determination that the officers did not violate [the plaintiff's] constitutional rights resolves plaintiff's claim against the City as well").

Finally, there is no evidence that the defendant's conduct in closing the cell doors constituted "gross negligence."  Instead, the record demonstrates that the defendant called out several warnings and rattled the clutch to warn inmates that he was closing the doors.  The plaintiff even admits to hearing the vibration.  The evidence fails to prove conduct that is "so reckless as to demonstrate a substantial lack of concern for whether an injury results."  Mich. Comp. Laws § 691.1407(7)(a).  Although Hornbuckle's conduct in closing the doors was the proximate cause of the plaintiff's injury, the defendant's warnings undermine a finding of gross negligence, and the plaintiff has offered no evidence to the contrary.

III.

-15-

The Court agrees with the magistrate judge that the plaintiff has not raised a material fact question on his claims of deliberate indifference and gross negligence. The defendants are entitled to dismissal as a matter of law.

Accordingly, it is **ORDERED** that the plaintiff's objections to the magistrate judge's report and recommendation [dkt #39] are **OVERRULED**.

It is further **ORDERED** that the magistrate judge's report and recommendation [dkt #38] is **ADOPTED**.

It is further **ORDERED** that the defendants' motion summary judgment [dkt #33] are **GRANTED**.

It is further **ORDERED** that the amended complaint is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   March 31, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 31, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL